(68 Misc. Rep. 107.)

## PEOPLE v. FRANEY, County Clerk.

(Supreme Court, Special Term, Albany County. June, 1910.)

COUNTIES (§ 74*)—COUNTY CLERKS—COMPENSATION.

Executive Law (Consol. Laws, c. 18) § 84, authorizing the Attorney General to require the county clerk to search in his office for any paper which he deems necessary for the discharge of his duties, and requiring a copy thereof to be made and certified without the payment of any fee, does not require the county clerk to search the records of deeds, leases, wills, etc., for 80 years to ascertain and certify the nonexistence of instruments affecting the title to lands, as required for an abstract of title, without compensation.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 105; Dec. Dig. § 74.*]

Application by the People for writ of mandamus against John Franey, clerk of Albany county. Writ denied.

Application for peremptory writ of mandamus, made by the Attorney General on behalf of the people, to compel the county clerk of Albany county to make and deliver, without compensation, a full abstract of title or official search for a period of about 80 years, affecting lands situate in the county of Albany appropriated by the state for the barge canal. Demand was heretofore made on the clerk by the Attorney General for such abstract under claimed authority conferred by section 84 of the executive law (Consol. Laws, c. 18). Such demand is further made under the claim that the search is necessary to enable the Attorney General to discharge the duty of examining and certifying the title to the land in question "in order that the state may pay to the person or persons entitled thereto the amount of the award for such land which has been appropriated by the state for canal purposes." The Attorney General claims that it is his duty to obtain this search from the county clerk and furnish it to other state officers under the provisions of section 4 of chapter 147, Laws 1903, particularly as amended by chapter 365, Laws 1906, wherein it is claimed that the Attorney General is required to furnish to the Comptroller and State Treasurer all searches necessary to prove the title to the lands taken.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The county clerk asserts that it is not his duty under any provision of law to make such search gratuitously, and refused to comply with the request of the Attorney General.

It is asserted and conceded, though not specifically appearing in the moving papers, that the county clerk receives his compensation for the services usually rendered by a county clerk through the payment of fees only; that 5,000 parcels of land are involved in the proposed barge canal improvement; that searches for some 2,500 parcels have been obtained, and some 2,500 remain to be obtained; that this proceeding is brought for the purpose of ascertaining, not only in Albany county, but in other counties similarly situated, whether or not the Attorney General may, without compensation, obtain such searches; that the construction of the barge canal affects lands located in the counties of Albany, Rensselaer, Saratoga, Washington, Schenectady, Montgomery, Fulton, Herkimer, Oneida, Oswego, Onondaga, Cayuga, Seneca, Wayne, Monroe, Orleans, Niagara, and Erie.

Edward R. O'Malley, Atty. Gen. (Edwin L. Ford, Deputy Atty. Gen., of counsel), for the People.

Luther C. Warner, for John Franey, county clerk of Albany county.

LE BOEUF, J. For the period of almost 100 years the canal system of the state has been the subject of legislation. During the period of the Revised Statutes, prior to the adoption of the Code of Civil Procedure, the canal system was in existence, and the need to appropriate land also existed, some of the early statutes requiring that, before any damages could be awarded for the taking of such lands, satisfactory abstracts of title and certificates of search as to incumbrances, showing the person demanding such damages or commutation to be legally entitled thereto, should be filed in certain offices.

By the provisions of 2 Rev. St. (5th Ed.) p. 650, pt. 3, c. 10, tit. 4, § 3, the Attorney General and other state officers were permitted "to require searches in the respective offices of each other and in the offices of the clerks of the Supreme Court, for any papers, records or documents necessary to the discharge of the duties of their respective offices, and to require copies thereof and extracts therefrom, without the payment of any fee or charge whatever." The language of this act indicated no intent, so far as the respective officers named, that each might demand of the other complete searches for all possible documents not known to exist, including certificates of the nonexistence of documents such as are required in an ordinary abstract of title and certificate as to incumbrances. The act on its face was apparently intended to cover cases where requisition was made for a particular document or documents known or believed to exist, and to require that copies of the same be furnished, or extracts made therefrom, as the need of the different departments of the state might require. About 1880 this latter provision was superseded by section 3290 of the Code of Civil Procedure, which for the first time included the county clerk. There was no effort made in this amendment to specify a search or abstract of title in the office of the county clerk of a character differing from that search which formerly under the Revised Statutes might be required to be made by the Attorney General in the office of the Comptroller or other state office. The new provision provided that such officers "may require search to be made in the office of either of the others, or of the county clerk, or of the clerk of a court of record

for any record, document or paper where he deems it necessary for the discharge of his official duties, and a copy thereof or extracts therefrom to be made and officially certified or exemplified, without the payment of any fee or charge."

Prior to this amendment, it does not appear that this law would have permitted the Attorney General to require the Comptroller, or the Comptroller to require the Attorney General, to search for 80 years of records of said office for any paper, voucher, or other document therein affecting a certain matter, without indicating the document desired, and for the purpose of proving its nonexistence rather than its existence. Such nonexistent records could neither be copied, nor extracts be made therefrom. Precisely that construction is now claimed when the provision changed from the Revised Statutes to the Code includes the county clerk for the first time. No authority for such a contention as between state officers, or as between state officers and the county clerk, has been shown to exist.

Matter of Snyder, 12 App. Div. 139, 42 N. Y. Supp. 1065, decides simply that an individual who orders a search must pay for it. It does not undertake to pass upon the right of the Attorney General to procure an abstract from a county clerk without compensation. Section 3290 of the Code has now been carried into section 84 of the executive law. Beginning in 1903, the state entered upon the carrying out of a gigantic scheme for the improvement of the state canals, involving an expenditure of over $100,000,000. This scheme required the appropriation of land on a very large scale—according to the Attorney General, the appropriation of at least 5,000 parcels. The barge canal law (chapter 147, Laws 1903), with the amendments thereto and supplemental acts to carry the same into effect, provided an elaborate scheme which, construed with section 83 of the canal law, seems clearly to have been intended to procure, without any judicial intervention, the permanent appropriation of the lands desired, upon which title immediately vested in the people of the state.

The first statute, in section 4 thereof, specifically gave the Court of Claims jurisdiction to award to owners the amount of damage which they sustained by such appropriation. Chapter 335 of the Laws of 1904, passed in aid of this statute, created special commissioners of appraisal and gave them statutory authority to agree with said owners, subject to the action of the canal board, for a fair valuation of the property appropriated. That statute plainly indicated that it was the duty of the Attorney General to pass upon the title of the alleged owners, as it was evident that such an agreement as is therein stated would be of little value and could not be certified by the canal board until it was clearly proven that the parties making it were entitled to be certified by that board to the Comptroller and the State Treasurer as the persons to whom the money should be paid.

Chapter 365, Laws 1906, amended section 4 of the act, leaving the original section, including the jurisdiction of the Court of Claims, just as it was, and then adding to it provisions which were clearly intended for no other purpose than to carry out the powers conferred by the act of 1904 with reference to agreements, and not with reference to proceedings in the Court of Claims. That amendment, plainly in-

tended solely for cases of agreement, had buried in its provisions the sentence "and the Attorney General shall furnish to the Comptroller and State Treasurer all searches necessary to prove the title to the lands taken." The word "and" with which it starts and the whole context indicate that that sentence is only a part of the general intent of the amendment to aid in the making of the agreements for which the act of 1904 made provision. The fact that the act of 1904 was finally repealed by chapter 195 of the Laws of 1908, appointing a special commissioner instead of the original appraisers, does not change the legislative intent in 1906. Nor did the amendments of section 4 made by chapter 195 of the Laws of 1908 and chapter 273 of the Laws of 1909 create any new situation, so far as these searches were concerned.

It is apparent from this section 4, so amended, that the individuals who claimed as owners and desired to make a bargain with the state are expected to produce searches. If that were not the case, no provision would be made for reimbursing them for the amount which they have to pay county clerks for the preparation of such searches. It is consistent with the usual procedure that these searches so prepared by them should be turned over to the Attorney General for his examination; and it may be entirely consistent with this provision that those are the searches which the Attorney General in his turn, with his approval thereon, shall furnish to the Comptroller and State Treasurer. But, in any event, though provision is hereby made indirectly for the payment to the county clerk for searches when ordered by individuals in such a case, no provision is made in terms requiring the county clerk to furnish full abstracts of title without compensation.

The question, however, is not of moment, because this is not the case of an agreement. The Attorney General's papers clearly indicate that this is the case of an award. The practice in the office of the Attorney General in these cases is not to undertake condemnation proceedings, but to rely either upon ascertaining damages by means of agreement, or by the action of the alleged owner through the Court of Claims. No statute has been called to my attention other than section 4 above recited, which is claimed to require the Attorney General to furnish abstracts of title. In the proceedings in the Court of Claims, it would occur to one that that court could hardly make a judgment directing an award to be paid to claimant until that claimant had clearly and indisputably shown that court by competent proof that he was the owner in fee of the property in question and entitled to receive the award. Though that court might refuse to determine the merits of the claims of persons which appeared on record by way of liens or incumbrances upon the property unless they were submitted on the consent of all the parties, yet, before any award on the question of title could be fairly made, satisfactory proof, it is assumed, should be given the court that the claimant has that title. Such proof would ordinarily be made by means of abstracts of title and certificates as to incumbrances. The Attorney General in the course of such examination might himself need such abstracts and certificates against incumbrances; but the statute does not in terms require him to procure them, and it certainly does not in terms assert that he may demand them without compensation. As section 84 now stands, I am re-

quired to read into it an authority on the part of the Attorney General to demand of the county clerk, not a certified copy or exemplified copy of an existing record; but, instead I am required to read into it authority to demand a complete and exhaustive search in the office of this county clerk for the period of 80 years of all record books in which might be recorded deeds, leases, wills, probates of heirship, mortgages, assignments, satisfactions, or releases of mortgages, affidavits on statutory foreclosure, sheriffs' certificates of sale, notices of pendency of action, orders appointing receivers, judgments, and such other records affecting these lands as would necessarily be required to be examined in order to make a complete abstract of title.

It is noteworthy that the request and the moving papers call for "a full abstract of the title." It is necessary, says the Attorney General, "in order to enable him to examine and certify the title" to the land in question. An abstract of title is a definite thing. The Attorney General would not be able upon it alone to certify the title were it a mere collection of certified copies or exemplified copies of existing documents on file. Something more is required to make it of value to him. That additional thing is the certificate of the county clerk that these are all the records on file in his office affecting the lands in question. Nowhere in section 84 is there the slightest hint that any officer therein mentioned is required to make any such certificate. The making of that certificate involves a personal responsibility on the part of the county clerk which to my mind was never within the contemplation of the Legislature.

Bearing in mind that the title has passed, the inquiry of importance to the state is that the right persons get the amount of the reward. Those persons will include not only owners, but lienors and incumbrancers. The abstract of title has, therefore, a more complete meaning in this case, and will require a certificate as against incumbrancers. As to these incumbrancers, it will be of little value without the like certificate on the part of the county clerk that these are all that he finds of record in his office. Such a certificate again involves a personal responsibility on his part. Entirely irrespective of the fact that this office is simply a fee office, that this county clerk, if many searches were required, would in all probability have to pay searchers out of his own pocket to make such abstracts, I believe that the provisions of statute upon which the Attorney General relies do not make it the the duty of the county clerk to honor the request.

A peremptory writ of mandamus should not issue on behalf of one officer to compel another officer to perform a duty, unless that duty is plain. In this case the duty is not plain and the writ should be denied, but without costs.

Writ denied, without costs.